## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DeJhan Sanders,

|  |  |
|---|---|
| Petitioner, | Case No. 5:22-cv-11307 |
| v. | Judith E. Levy<br>United States District Judge |
| Noah Nagy, | |
| | Mag. Judge Patricia T. Morris |
| Respondent. | |

_____/

## OPINION AND ORDER
## DENYING AMENDED PETITION FOR A WRIT OF HABEAS
## CORPUS [16], DENYING A CERTIFICATE OF APPEALABILITY,
## AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA
## PAUPERIS

Petitioner DeJhan Sanders is a Michigan prisoner presently

confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

On June 9, 2022, Petitioner, proceeding *pro se*, filed a habeas corpus

petition under 28 U.S.C. § 2254. (ECF No. 1.) On October 17, 2023,

Petitioner filed an amended petition. (ECF No. 16.)  He challenges his

convictions for two counts of first-degree criminal sexual conduct ("CSC-

I"), Mich. Comp. Laws § 750.520b; first-degree home invasion, Mich.

Comp. Laws § 750.110a(2); resisting arrest, Mich. Comp. Laws §
750.81d(1); and aggravated stalking, Mich. Comp. Laws § 750.411i(2)(b).
He raises four claims for habeas relief in his Amended Petition. (*See* ECF
No. 16, PageID.1221–1224). Because the state court's denial of these
claims was not contrary to, or an unreasonable application of, Supreme
Court precedent, the petition for habeas corpus is denied. The Court also
denies a certificate of appealability, and denies Petitioner leave to
proceed on appeal *in forma pauperis*.

## I.   Background

Petitioner's convictions arose from the sexual assault of his former
girlfriend. The Michigan Court of Appeals provided the following
overview of the circumstances leading to his convictions:

> Defendant's convictions resulted from a sexual assault he
> committed in December 2018. The victim testified that she
> and defendant had been in a relationship for seven years and
> had three children in common. She stated that the
> relationship became violent, and most of the abuse progressed
> in the year before the sexual assaults. In January 2017,
> defendant broke into the victim's home, following which she
> obtained a personal protection order. Defendant subsequently
> broke into her home multiple times. In July 2018, the victim
> called the police as a result of an assault. Defendant testified
> that he pleaded guilty to domestic violence. Both defendant
> and his probation officer testified that, in November 2018, the

terms of defendant's probation order prohibited contact with the victim.

In November 2018, the victim called the police after defendant broke in and began hitting her. The victim told a police officer that she thought she had locked the door, but defendant appeared in her apartment, yelling and angry. He asked why she had called the police and began hitting her in the head and face. The victim identified two photographs of her that were taken in November 2018. The police officer testified that a medic examined the victim, but she did not want to go to the hospital.

When asked about the incident on December 6, 2018, the victim stated that she was having trouble remembering. The victim testified, "I remember him coming in—I think he raped me or something like that. I can't—." The victim confirmed that defendant had put his penis in her vagina, and she stated, "I think I said no repeatedly." The victim then requested a break, which the trial court granted, noting that the victim looked "pretty sick" and wondering if 911 should be called. The trial court sent someone to check on the victim and, in the meantime, took another witness out of order. When the victim returned to the stand, she could not remember how defendant broke in, but she remembered telling defendant that he was not allowed at her house. She did not invite defendant over, and she asked him to leave twice.

The victim testified that she remembered being in her bedroom. She repeatedly told defendant to stop, but he did not stop. He took her clothes off. When asked how many times it happened, the victim testified, "Only once. Only once. I'm sorry. It's just my mind, my head. I don't like to remember. I don't." She stated that she sometimes forgot and sometimes

remembered because it was traumatic, and sometimes it was "all foggy" and she had trouble remembering what happened. After using a police report to refresh her memory, the victim testified: "Yes. My God. Yes, I remember." She believed that "it" happened two times. She remembered one incident with clarity and the second was blurry.

Police officers testified that, because defendant had previously fled through a window or door, they stayed outside while another police officer contacted the victim. One of the officers testified that he saw defendant crawl out a window, and after the officer told him to stop, defendant ran away. The officer put defendant on the ground, where he struggled, screamed expletives, and struck at the officers. He testified that two other officers helped him arrest defendant, and one officer's wrist was hurt as she tried to grab defendant's legs while he kicked. The officer testified that, after defendant was put in the police car, he began hitting his head and stated that he was suicidal. The officer took defendant to the hospital.

The police officer who interviewed the victim testified that, after the victim was informed defendant had been arrested, she appeared a little more comfortable. The interviewing officer's body-camera video was played for the jury. In the video, the victim informed the interviewing officer that defendant forced his way into her house and would not leave. The victim stated that defendant pulled her hair and she told defendant that she did not want to "do anything," but "he didn't take no for an answer." She stated that defendant made her go into a room with him, that she did not want to, that defendant wanted to have intercourse but she did not want to, and that she told him "no" but did it anyway because defendant told her he would beat her if she did not go into the bedroom with him and she did not want to get hurt. The

4

victim stated that she tried to leave the bedroom, but defendant made her go back into the bedroom "to do that again." She agreed that she and defendant had sex a second time, and described that defendant pulled her pants off, held her down, and forced her to have intercourse with him. The assault stopped when they heard knocking on the door.

Defendant testified that he was at the victim's apartment on December 6, 2018. He stated that the victim had invited him over to help care for the children. He and the victim had an argument about a female contact in defendant's phone, but the argument did not escalate to physical violence. Defendant testified that, when he was smoking by a window, he heard his son tell the victim that the police were there. Defendant knew that he was not supposed to have contact with the victim, so he went out the window. According to defendant, as soon as he turned around, he was tackled and felt like people were jumping up and down or crawling on him. He could not breathe. He stated that the police did not tell him to stop.

Defendant denied that he was taken to the hospital because he was suicidal. He stated that he was taken to the hospital because he was having trouble breathing. Defendant denied repeatedly swearing at officers, doctors, and nurses while at the hospital. On rebuttal, the prosecution offered into evidence a police officer's body-camera video that showed defendant at the hospital, struggling with officers, yelling obscenities, and stating that he wanted to commit suicide.

The jury found defendant guilty of two counts of CSC-I, one count of first-degree home invasion, one count of resisting a police officer, and one count of aggravated stalking.

*People v. Sanders*, No. 351798, 2021 WL 2618139, at *1–2 (Mich. Ct. App. June 24, 2021). Petitioner was convicted by an Ingham County jury of two counts of CSC-I, one count of first-degree home invasion, one count of resisting arrest, and one count of aggravated stalking. (*See* ECF No. 12-13, PageID.883–884.) The trial court sentenced him as a second-offense habitual offender, Mich. Comp. Laws § 769.10, to serve 240 to 420 months in prison for both counts of CSC-I, 240 to 360 months in prison for home invasion, 24 to 36 months in prison for resisting arrest, and 45 to 90 months in prison for aggravated stalking. (*See* ECF No. 12-17, PageID.980–981.)

On direct appeal to the Michigan Court of Appeals, Petitioner, through counsel, filed a brief asserting that the prosecution failed to present sufficient evidence to support two separate counts of CSC-I. (*See* ECF No. 12-17, PageID.981–983.) Petitioner also filed a *pro per* supplemental brief. (*Id.* at PageID.1027–1040.) In its review of Petitioner's supplemental brief, the court of appeals identified nine additional claims: (1) verdict was against the great weight of the evidence, (2) newly discovered evidence, (3) evidentiary issues, (4) juror bias, (5) ineffective assistance of trial counsel, (6) substitution of counsel,

(7) DNA evidence, (8) denial of bond, and (9) sentencing errors. *Sanders*, 2021 WL 2618139, at \*3–10. On June 24, 2021, the court of appeals affirmed Petitioner's convictions and sentence. *See id*. at \*1, \*10. Petitioner then filed a *pro per* application for leave to appeal with the Michigan Supreme Court. (*See* ECF No. 12-18.) On January 31, 2022, the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Sanders*, 969 N.W.2d 25 (Mich. 2022). Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. (ECF No. 1, PageID.3.)

Petitioner's initial application to this Court for a writ of habeas corpus contained eight claims: (1) sufficiency of the evidence, (2) verdict was against the great weight of the evidence, (3) "evidentiary issues" based on the trial court's admission of evidence of Petitioner's prior assault on the victim, (4) ineffective assistance of counsel, (5) denial of bond, (6) suppression of DNA evidence, (7) "error in bindover and denying [the] motion to quash," and (8) "credibility of [a] witness." (ECF No. 1, PageID.5–15.) Respondent filed an answer to the petition arguing, in part, that the following claims asserted by Petitioner were unexhausted: verdict against the great weight of the evidence, evidentiary issues

7

related to the admission of Petitioner's prior assault on the victim, denial of bond, and credibility of a witness. (*See* ECF No. 11, PageID.66–69, 74–75, 97–98.)

Petitioner then filed a motion to stay, seeking to return to the state courts to exhaust these claims. (ECF No. 14.) On September 21, 2023, the Court entered an order denying Petitioner's motion to stay on the basis that the unexhausted claims were not potentially meritorious. (ECF No. 15, PageID.1209.) The Court then directed Petitioner to file an amended petition for a writ of habeas corpus that contains only his exhausted claims or inform the Court that he did not intend to file an amended petition. (*Id.* at PageID.1216–1217.)

On October 17, 2023, Petitioner filed an amended petition asserting the following four claims:

   I.    Sufficiency of the Evidence

   II.   Ineffective Assistance of Counsel

   III.  Suppression of DNA Evidence

   IV.  Improper Bindover

(ECF No. 16, PageID.1221–1224.) Respondent contends that each claim lacks merit. (*See* ECF No. 11, PageID.56–66, 81–96, 103–107, 108–112.) For the reasons set forth below, the Court agrees.

## II.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court's review of constitutional claims raised by a state prisoner in a habeas action is limited to claims that were adjudicated on the merits by the state courts. *Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020) (citing 28 U.S.C. § 2254(b)(1)). A habeas petitioner who asserts claims previously adjudicated by state courts must show that the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The question under this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher

threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). A state-court decision is

> "contrary to" . . . clearly established law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent."

*Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams*, 529 U.S. at 405–06; citing *Price v. Vincent*, 538 U.S. 634, 640 (2003); *Early v. Packer*, 537 U.S. 3, 7–8 (2002) (*per curiam*)).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413; citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "[T]hat application must be 'objectively unreasonable.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 409).

The Sixth Circuit has stated that:

> [t]o succeed on a habeas petition, a petitioner must show more than that the state court made an error; he must demonstrate

10

that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Gaona v. Brown*, 68 F.4th 1043, 1047 (6th Cir. 2023) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (internal citations and quotation marks omitted).

Additionally, a state court's factual determinations are presumed to be correct on federal habeas review, and the petitioner "ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Analysis

### A. Sufficiency of the Evidence

Petitioner first argues that the prosecutor presented insufficient evidence to support a guilty finding of one or two counts of CSC-I. (ECF No. 16, PageID.1221.) Specifically, he contends that the victim's

11

uncorroborated and inconsistent testimony was insufficient to support his convictions. (*Id.*) The Michigan Court of Appeals rejected this argument, finding a reasonable jury could have concluded from the evidence that Petitioner sexually assaulted the victim twice. In support, the court stated, in relevant part, that:

> In this case, the victim at one point testified that defendant assaulted her "[o]nly once." However, the victim also testified that she had trouble remembering the incident. After her memory was refreshed, the victim testified that she remembered two incidents of sexual assault, one with clarity and the other blurry. Additionally, in the body-camera video of the interviewing officer, the victim described that defendant made her go into the back bedroom to have sex with him. She did not want to and told defendant "no," but she had sex with him because she did not want to be beaten. She stated that she tried to leave, but defendant made her "do that again." The second time, defendant held her down, pulled off her pants, and forced her to have intercourse.
>
> Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could determine that defendant committed two separate sexual assaults. Although the victim initially testified that defendant only assaulted her once, she later testified that he assaulted her two times. Additionally, in a video taken on the night of the assaults, the victim described two distinct instances of sexual assault. A rational trier of fact could resolve the conflicting evidence in favor of finding that defendant committed two separate sexual assaults.

*Sanders*, 2021 WL 2618139, at *3.

The Michigan Court of Appeals' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a federal court on habeas review—the factfinder

13

at trial and the state court on appellate review—as long as their determinations were reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788–89.

In this case, the victim testified that she had trouble remembering the exact details of the assaults. (ECF No. 12-10, PageID.534.) She explained that she tried to "put it in the back of [her] mind" because she did not like remembering it. (*Id.* at PageID.561.) The victim testified that Petitioner removed her clothes and raped her in her bedroom after she told him to stop. (*Id.* at PageID.566–567.) When asked if the sexual assault happened only one time or multiple times, the victim responded, "Only once. Only once. I'm sorry. It's just my mind, my head. I don't like

14

to remember. I don't." (*Id*. at PageID.567.) On cross examination, the victim again struggled to remember the exact details of what happened when Petitioner broke into her apartment, often responding, "I don't remember." (*See, e.g.*, *id*. at PageID.590.) When defense counsel asked if the sexual assault happened only once, the victim responded, "Yes." (*id*. at PageID.597.)

On redirect, the prosecutor revisited this portion of her testimony and asked if the victim remembered providing a statement to the police about two different assaults that occurred on December 6, 2018. (ECF No. 12-10, PageID.604.) When the victim responded equivocally, the prosecutor offered the police report to refresh her memory. The victim reviewed the report and testified, "Yes. My God. Yes, I remember." (*Id*. at PageID.605.) The victim then testified about the second assault, stating that Petitioner pushed her down on the bed, removed her clothes, and raped her. (*Id*. at PageID.606.) Such testimony, if believed, was sufficient to support Petitioner's convictions for two counts CSC-I. While a victim's testimony alone can be constitutionally sufficient to sustain a conviction, *see Tucker v. Palmer*, 541 F.3d 652, 658–59 (6th Cir. 2008) (citing cases), Officer Hannah Robeson also testified that when

15

interviewing the victim on the date of the incident, the victim described two instances of sexual assault by Petitioner. (ECF No. 12-11, PageID.676–677.)

Petitioner argues the victim's testimony was insufficient. Petitioner maintains that because the victim's testimony was inconsistent with her prior testimony and the police report, it shows that her trial testimony was fabricated. (ECF No. 16, PageID.1221.) However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326. The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable, and the evidence presented at trial, viewed in a light favorable to the prosecution, established Petitioner's guilt on two counts CSC-I beyond a reasonable doubt. Habeas relief is not warranted.

### B. Ineffective Assistance of Counsel

Next, Petitioner argues that trial counsel was ineffective for failing to subpoena witnesses, order an assessment of Petitioner's competency, order a polygraph test, and represent Petitioner to his best ability.[1] (ECF

---

[1] In his answer, Respondent argued that a portion of this claim related to counsel's failure to make objections was procedurally defaulted. Petitioner does not renew this argument in his Amended Petition. (*See* ECF No. 16, PageID.1222.)

No. 16, PageID.1222.) When Petitioner sought review of the ineffective-assistance-of-counsel issue in the Michigan Court of Appeals, he had not preserved the issue, in either the trial court or the court of appeals, by moving for a new trial or for an evidentiary hearing. *Sanders*, 2021 WL 2618139, at *6. Accordingly, the Michigan Court of Appeals' reviewed the ineffective-assistance-of-counsel claim for plain error. *Id.* at *3, *6.

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Mejia v. Davis*, 906 F.3d 307, 314 (6th Cir. 2018). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id.*

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective

---

Accordingly, the Court understands this portion of his claim to be abandoned and will not address it in this opinion.

17

assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011)) (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable" but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

### i. Failure to Subpoena Witnesses

Petitioner argues that trial counsel failed to subpoena witnesses on his behalf. (ECF No. 16, PageID.1222.) The Michigan Court of Appeals rejected this argument, concluding that counsel's refusal to "accept all of defendant's suggestions for how to conduct the defense . . . does not establish either a lack of preparation or indifference to his client." *Sanders*, 2021 WL 2618139, at *6.

The Michigan Court of Appeals' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

18

unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective." *Strickland*, 466 U.S. at 681. Moreover, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

In this case, Petitioner offers no evidence to overcome the presumption of correctness afforded to the state courts' factual determinations. When the petitioner predicates an ineffective-assistance-of-counsel claim on a failure to call a witness, he must provide

the substance of the missing witnesses' potential testimony. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Petitioner fails to provide the Court with the names of the witnesses who should have been called, what they would have testified about, and how that testimony would have aided his defense. There is simply nothing in the record supporting the claim that the failure to subpoena witnesses deprived Petitioner of a substantial defense. Accordingly, he is not entitled to habeas relief on this claim.

### ii. Failure to Order Testing/Full Representation

Next, Petitioner claims that defense counsel was ineffective for failing to order a competency assessment and polygraph testing and failing to represent Petitioner to the best of his ability. (ECF No. 16, PageID.1222.)

With respect to the first portion of the claim, Petitioner did not raise the competency and polygraph testing argument on direct appeal. Nevertheless, an unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th

20

Cir. 1987). Such is the case here. Petitioner's argument lacks merit and is purely conclusory. Not only does Petitioner fail to provide evidentiary support, but he also fails to explain in any detail how counsel's actions were unreasonable and how either a competency or polygraph examination would have affected the outcome of his trial. Conclusory allegations of ineffective assistance of counsel, without evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (denying an ineffective assistance of counsel claim because the petitioner "provide[d] no support for this claim"). Therefore, he is not entitled to habeas relief.

Petitioner also claims that because counsel expressed that he was afraid of him, he was unable to provide effective assistance. (ECF No. 16, PageID.1222.) The Michigan Court of Appeals rejected this argument on direct appeal stating, in relevant part, that:

> At the beginning of trial on the day following defendant's statement that counsel had not asked questions that defendant wished to ask, defense counsel stated that, "in a word I'm—not to put too fine a point on it, I'm afraid of [defendant]. He—I'm caught between a rock and a hard place here, Your Honor." The following conversation occurred:
>
> THE COURT. Would you like your attorney to continue?

21

THE DEFENDANT. Yes, Your Honor.

THE COURT. Can you behave yourself?

THE DEFENDANT. Yes.

THE COURT. Can you talk with him in a polite manner?

THE DEFENDANT. Yes, Your Honor.

A police deputy testified that he had placed a "stun cuff" on defendant, which was later explained as being [a] "taser cuff." The trial court declined defense counsel's request to withdraw on the basis that defendant indicated that he would behave and that defendant was wearing a stun cuff. When asked whether he was prepared to represent defendant and proceed, counsel responded, "That is very much correct, Your Honor."

To the extent that there was a breakdown in the attorney-client relationship, defendant caused it. Additionally, after defendant was restrained, counsel indicated that he was prepared to proceed and represent defendant. Further, there is no indication in the record that defendant was actually prejudiced, or that defense counsel performed deficiently during the remainder of the trial. We also observe that defendant had, as will be discussed below, a release on a personal recognizance bond; and throughout the trial, the court repeatedly warned defendant that if he caused further disruptions, the conclusion of his trial would take even longer. We conclude that the trial courts decision not to appoint replacement counsel did not fall outside the range of reasonable and principled outcomes.

22

*Sanders*, 2021 WL 2618139, at \*7–8. The Michigan Court of Appeals' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. There is nothing in the record that suggests counsel was ill-prepared for trial or that counsel was unable to represent Petitioner despite informing the trial court that counsel feared him. Indeed, the record supports a contrary conclusion that defense counsel confidently pursued Petitioner's defense after being assured Petitioner would behave. *See id.* at \*8. Moreover, Petitioner agreed to allow counsel to continue his representation after the trial court denied the request to withdraw. (*See* ECF No. 12-12, PageID.706.) In sum, Petitioner fails to explain how defense counsel's performance was deficient and prejudiced his trial. Therefore, he is not entitled to habeas relief.

### C. Prosecutorial Misconduct

Next, Petitioner argues that the prosecutor committed misconduct by failing to test his clothing for DNA evidence.[2] (ECF No. 16,

---

[2] Petitioner also appears to argue that the prosecutor introduced inadmissible evidence of the police report, and the body camera video. Petitioner argues "the prosecutor knew of the 9-20-19 court hearing on the objection to the police report and bodycam usage [where] judge ruled she wouldn't allow it then she did." (ECF No. 16,

PageID.1223.) The Michigan Court of Appeals rejected the argument on direct appeal, concluding that:

> The prosecutor must give the defendant any favorable evidence that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87; 83 S. Ct. 1194; 10 L. Ed. 2d 215 (1963); *People v. Burger*, 331 Mich. App. 504, 518; 953 N.W.2d 424 (2020). However, "[t]he prosecutor's office is not required to undertake discovery on behalf of a defendant." *People v. Leo*, 188 Mich. App. 417, 427; 470 N.W.2d 423 (1991). In this case, there is no indication that the prosecution possessed exculpatory DNA evidence. Officers testified that defendant's clothing was collected but not tested for DNA. The prosecution was not required to perform DNA testing or other discovery for defendant. Furthermore, although defendant asserts that DNA testing would have exonerated him, he does not explain how.

*Sanders*, 2021 WL 2618139, at *8.

The Michigan Court of Appeals' decision was not an unreasonable application of federal law, nor did it contravene clearly established Supreme Court precedent. The Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986), establishes the standard for evaluating

---

PageID.1223.) Although Petitioner seems to challenge the prosecutor's conduct, he concedes that the evidence was allowed by the trial court. A prosecutor does not commit misconduct by introducing evidence that is admissible under state law. *See Dufresne v. Palmer*, 876 F.3d 248, 261 (6th Cir. 2017). Accordingly, the trial court's ruling necessarily defeats such an argument.

claims of prosecutorial misconduct. Under *Darden*, a prosecutor's misconduct deprives a criminal defendant of due process of law where it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *Darden* therefore sets a "high bar" for relief. *Stewart v. Trierweiler*, 867 F.3d 633, 639 (6th Cir. 2017).

Further, it is well-established that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To find a *Brady* violation, the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, Petitioner fails to show that the prosecution committed misconduct by failing to test his articles of clothing for DNA evidence. During trial, Officer Bacigal testified that when he brought Petitioner to the hospital, he collected his clothes and placed them into evidence, but did not test them. (ECF No. 12-10, PageID.553–554.) A prosecutor does not have an affirmative duty to take action to discover information which it does not possess or to investigate information which might be favorable to the defense. *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010). Petitioner does not explain how the DNA evidence would have been exculpatory or material to the question of guilt, particularly where Petitioner's identity was not at issue. He also fails to explain how the prosecutor suppressed this evidence. If Petitioner wanted to test his clothing items prior to trial, he certainly could have done so. For these reasons, Petitioner is not entitled to habeas relief on this claim.

### D. Improper Bindover

Lastly, Petitioner alleges that the state district court abused its discretion by binding him over to circuit court for trial. (ECF No. 16, PageID.1224.) He argues that the district court erred because the victim provided untruthful and uncorroborated testimony of the sexual assaults.

(*Id.*) Petitioner did not raise this claim before the state courts; nevertheless, the Court will address it here because it clearly lacks merit. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987).

Petitioner's claim fails because he has not identified a clearly established federal law that would contradict the bindover order. "The bind-over decision itself invokes a question of state law, which is not cognizable on habeas corpus review." *Redmond v. Worthinton*, 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578–79 (E.D. Mich. 2004), *aff'd*, 398 F.3d 783 (6th Cir. 2005)). As the court explained in *Dorchy*, because "the federal Constitution does not require that a probable cause hearing be conducted prior to a criminal trial . . . the bind-over decision constitutes a state-law issue which does not implicate a federal constitutional right and is not subject to review in a habeas proceeding." *Dorchy*, 320 F. Supp. 2d at 578 (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Schacks v. Tessmer*, No. 00–1062, 2001 WL 523533, at *6 (6th Cir. May 8, 2001)). Because no federal constitutional right is implicated by the bindover decision, Petitioner cannot maintain a claim for habeas relief.

27

## IV.  Conclusion

For the reasons set forth above, Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), a habeas petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Finally, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

28

**IT IS SO ORDERED.**

Dated: November 6, 2025                    s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 6, 2025.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager